[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The parties were married June 7, 1969, 26 years ago. They initially separated in 1990. They reconciled for approximately 10 months and have been living separate and apart since 1991. This is the second dissolution of marriage action commenced by the plaintiff. He filed for divorce, initially by writ returnable on August 7, 1990. Somewhere around November, 1990 that writ was withdrawn. The Present action commenced by writ returnable November 30, 1993. One party has resided in the State of Connecticut for more than one year prior to bringing this action. There are no minor children born to the wife since the date of the marriage. Neither party has been a recipient of public assistance.
The plaintiff is 48 years old. He is in good health, although he sustained a spinal cord injury from a work-related automobile accident in 1981. Mr. McGran has a Bachelor's Degree in psychology from Sacred Heart University, which he attained prior to marriage. Indeed, the parties were married on the day of his graduation. The plaintiff is employed by the Connecticut State Police, as a trooper. He has been with them 21 — 1/2 years and has been twice promoted, now holding the rank of master sergeant. Early in the marriage, prior to joining the State Police, Mr. McGran worked at a food store and briefly taught. During those early years, he a also had side jobs in landscaping with the defendant's father, and caretaking for some elderly people at their Connecticut properties. The caretaking also resulted in no charge housing in exchange for CT Page 14688-a plaintiff's services. Throughout the plaintiff's employment with the Connecticut State Police, he has voluntarily worked overtime hours. Commencing in 1982 after the Mianus Bridge collapse, large chunks of overtime were available and Mr. McGran took advantage of it. Since that emergency, overtime is now worked on a voluntary basis. Mr. McGran has continued to pickup overtime. His shift hours have varied throughout the marriage, sometimes at his election.
The court finds that Mr. McGran has worked overtime most of the years of the marriage. The number of hours have varied according to both what has been available to him, and, what have been the financial needs of the McGran family unit.
The court may consider the net overtime Mr. McGran has worked and can work for purposes of establishing an appropriate alimony order. The court finds it would be an unfair burden to Mr. McGran to create an alimony order which requires Mr. McGran to endlessly continue to sustain overtime work at the levels he has for the past five years. In 1990 through 1993 the substantial increase in overtime worked was in response to the financial pressure of college tuition for one of the parties' sons. Thereafter, Mr. McGran has worked substantially similar overtime in 1994 and 1995. This has been in large part to afford a $425.00 per week alimony pendente lite order. A cycle was created that has continued, for at the time of the $425.00 alimony pendente lite order of 1-26-94 Mr. McGran's affidavit showed overtime gross of $629.00 week ($32,708 annually) and net of $423 ($21,996 annually). The $425.00 alimony order was 86.91% of his regular income net. That order created the need to continue to work significant amounts of overtime these last two years.
The court finds that the alimony order should take into account the plaintiff's ability and past record of overtime work. It does not require him to maintain a level of overtime which had been tantamount to two 7 hour overtime days every week, on average.
The pension of the plaintiff with the State of Connecticut is vested; it is an annuity. It functions as a replacement for social security and a hazardous duty pension. It is a marital asset subject to division under § 46b-81. Krafick v. Krafick, 234 Conn. 783,798 (1995). The present value of the plaintiff's interest in his pension is $717,171 for a current retirement. It will be worth CT Page 14688-b $418,013 for retirement at 55 and $144,212 for retirement at 65. Presently, it will pay him $3,110. per mouth (after the Social Security deduction) upon his retirement. In finding these values the court accepts undisputed evaluations presented by Barry Kaplan, and, by Karen McDonald, Retirement Benefits Manager, State Employees Retirement Commission. The pension is administered by the State. The funds are held by the State until such time as they are paid out to the retired employee. These retirement benefits have accrued as a result of both Mr. McGran and Mrs. McGran's respective marital labors.
The parties disagree as to whether the SERS pension itself can be divided by an Order of the court. The State of Connecticut itself, took the position, until recently, that it could not be attached or assigned for any purpose unless specifically provided for by statute. The State Employee's Retirement Act is codified at Connecticut General Statutes 5-152 through 5-192mmm. The past policy to allow no assignment of the employee's pension finds its authority in Connecticut General Statutes 5-171, which provides, "Any assignment by a member or beneficiary of any amount payable to either under the terms of this chapter shall be null and void." Within the last year, the State of Connecticut Comptroller's Office has revised the nonassignability policy regarding domestic relations orders for spousal or child support. The law, however, has not changed, only the internal administrative policy. Mrs. McGran argues that an order by this court assigning a petition to the pension to her would have the force of law and therefore the final statutory provision at Connecticut General Statutes 5-171
would prevail. It provides, "If the provision of this section are contrary to the law governing a particular circumstance, then as to that circumstance, any payment shall be exempt to the maximum extent permitted by law." The court disagrees. Trial court case law cannot be reflected in the legislative intent circumscribed by use of the language "the law" in Connecticut General Statutes 5-171
Indeed, this court can only order what is permitted by the law.
The Connecticut Supreme Court in Krafick, in concluding that vested pension benefits to be received in the future were 46b-81
"property" was dealing with a pension from the New York State teachers' retirement system. A qualified domestic relation order (QDRO), pursuant to 29 U.S.C. § 1001 et seq. "is the exclusive means by which to assign to a nonemployee spouse all or any portion of pension benefits provided by a plan that is governed by [ERISA]."Krafick p. 786 fn. 4. In that footnote the Supreme Court noted CT Page 14688-c (similar to the situation here that governmental pensions are not governed by the ERISA law of QDRO's. The Supreme Court stopped its inquiry after the representation by an amicus brief that orders similar to QDRO's were being accepted by New York when they were in favor of the employee's spouse. Ibid, p. 787 fn. 4. Their inquiry stopped there, and, therefore, so shall this court's inquiry.
Mrs. McGran also seeks an order providing that she shall be the recipient of survival benefits. The policy of the State of Connecticut Office of Comptroller does not extend this far, to date. Mr. McGran argues that such an order is expressly prohibited by SERA, and is in direct conflict with the plan provisions for a subsequent spouse of Mr. McGran.
An assignment of a portion of Mr. McGran's benefits as a state employee is made pursuant to Connecticut General Statutes § 46b-81. It is axiomatic in Connecticut law that orders made pursuant to Connecticut General Statutes § 46b-81 are nonmodifiable after four months, absent fraud, duress, etc. An order assigning a portion of the benefits to Mrs. McGran will result in her being named the alternate payee of those benefits. Such an order will vest her with all the ownership rights inherent in the property assigned to her unless limited by this court.
The defendant is 46 years old. She has graduated from high school. She attended one year of secretarial school. Her physical health is not good. She has certain diagnosed maladies: acute ulcerated colitis, hyperthyroidism and an enlarged heart with atrial fibrillation.
The colitis is a cyclical malady which goes through periods of exacerbation, and, periods of regression. At its worst, it is very uncomfortable, requiring hospitalization with painful, invasive procedures. It is symptomatically present when the defendant experiences sweats, rectal bleeding, diarrhea and nausea. When its is active, the defendant cannot work. She is medicated daily on a variety of medications which have caused bloating and over the last year hair loss and vision problems. The thyroid and heart condition are also controlled by medication which the defendant self-administers daily.
Mrs. McGran is employed as a resources receptionist with Dependent Care Connection, Inc. Her work is in Westport. She has had this employment for approximately one year. It is full time. CT Page 14688-d It provides a health insurance benefit with some cost. Its coverage is not as complete as her husband's plan. She is currently covered on both plans with primary coverage through her husband.
Early in the marriage, Mrs. McGran was employed in clerical work, but this ceased midterm of a toxemic pregnancy with the parties' first child. In the mid-1970s she went back to work outside of the home part time. Thereafter, beginning around 1984, she worked 30 hours per week in secretarial work. Ultimately this became full time. The employment terminated in 1991. She was earning $10. per hour. During the period from 1991 to 1994 she had two other jobs. Each time she bettered her employment compensation, until her present employment. She now earns $22,750 per year, working full time.
The parties have two children issue of the marriage. Both are in their twenties. One son has been living with mother but has plans to move out shortly. He has been paying her cable television bill and a portion of the household telephone bill. The other son lives on his own with his family. He is a college graduate. His education was paid from funds of the marital estate; he was in college from 1990 to 1994. Throughout the children's early years, Mrs. McGran was at home with them. She was a good mother. She provided well for the family and the household. She cooked well and kept a clean and orderly home. Both she and Mr. McGran attended to their children's activities.
The parties' marriage has broken down irretrievably. While both parties bear some responsibility for the breakdown of the marriage, the heavier burden falls upon Mr. McGran. Mrs. McGran chose to ignore the stressors of the marriage and the occasional times Mr. McGran manifested his dissatisfaction. However, that avoidance pales before Mr. McGran's contributions to the demise of this marriage. He unfairly expected Mrs. McGran to be a seer, to know that he was so unhappy that he was contemplating divorce. He failed to communicate his feelings, communication, honesty and faithfulness are essential ingredients of a marriage. Mr. McGran displayed none of them. To return to the home and the marriage after the first separation was a selfish act. He led Mrs. McGran on to believe there was hope for the marriage when all it was for him was a temporary economic measure. He exacerbated this by violating an essential vow that binds when he began an affair and continued it. His wife was never told of it. This further lack of CT Page 14688-e honesty reflected Mr. McGran's complete abandonment of his marriage and its obligations. This was not a case of a prodigal husband, but rather a calculating man who wanted it all: home and its familial and economic security, and, an affair with all of the allure of its excitement and lack of commitment. Mr. McGran bears ultimate responsibility for the breakdown of the marriage. He has failed to prove his complaint of intolerable cruelty by the defendant.
A dissolution of the parties' marriage is ordered and granted based upon the defendant's cross-complaint. The court has considered all of the marital estate, the credible evidence and all of the statutory criteria for the award of alimony and division of the marital estate.
The plaintiff is ordered to pay the defendant periodic alimony in the amount of $325. per week, until the defendant's remarriage, cohabitation as defined by statute and case law, or either party's death. Upon the plaintiff's retirement from the Connecticut state Police, the weekly alimony shall reduce to $1.00 per year. This reduction takes into account the following finding. Upon retirement from the State Police the plaintiff's pension and the defendant's Pension Domestic Relations order (see below) will take effect. It does not consider any other economic circumstances of the parties that may exist on date of the plaintiff's retirement.
The plaintiff shall provide life insurance with the defendant the named beneficiary in the face amount of $200,000 until he is 58 years old and then it shall reduce to $100,000, free of any liens or encumbrances, so long as the plaintiff has an alimony obligation to the defendant. This order is designed to insure the affordability of the premium and adequate coverage for the defendant.
The plaintiff shall, by quitclaim deed, transfer all of his right, title and interest in and to the real property at 163 Depot Road, Milford to the defendant. The defendant shall pay all of the expenses thereon, including the home equity loan and indemnify and hold the plaintiff harmless of all of these expenses. The deed shall be signed and conveyed within 90 days of the judgment.
The plaintiff shall be the sole owner of the following assets free of any claim from the defendant: his deferred compensation account ($62,046.90); his Shawmut checking; his CSP Credit Union; CT Page 14688-f and the parties' time share. The defendant shall convey all of her interest therein to the plaintiff and, the plaintiff shall indemnify her and hold her harmless in regard to its expenses.
The defendant shall be the sole owner of the following assets free of any claim from the plaintiff:
The 1988 Mercury Cougar and the plaintiff shall transfer title to the defendant; her NHSB checking account ($588.60); her NHSB savings account ($1,664.29); her Sun Life Insurance Policy (cash value $789.66); her Polish National Insurance Policy (cash value $510.22); and her jewelry.
The parties stated on the record, at trial, that they believe they can satisfactorily divide their household furnishings. If not, they are referred to Family Relations for final arbitration.
By way of property settlement, the defendant shall pay the plaintiff $20,000 within 180 days of the judgment.
The plaintiff is awarded, pursuant to a Pension Domestic Relations order to be drafted by plaintiff, $1,555. per month of the defendant's SERS pension, plus interest and cost of living accruals on that sum from this date forward, in accordance with the plan provisions. The court will retain jurisdiction over the pension solely for modification of the order to reflect the intent of the court's order and the plan administrator's requirements.
The court orders the plaintiff to select option 3(b) of the SERS Tier/Summary Plan description and therefore elect the contingent annuitant payment Option for 50% of the payee [employee] and alternate payee [Mrs. McGran's] benefits.
The court finds and orders that the § 46b-81 award of $1555 per month of Mr. McGran's current valued pension entitles her to 50% of the retained rights of joint survivor s benefits, which are herewith ordered as hers, and Mr. McGran is ordered to so continue that designation to her benefit. Mr. McGran's retained right of designation of the joint survivor beneficiary is limited by this Order. Failure of Mr. McGran to so designate the plaintiff shall be a charge against his estate for her losses sustained.
The court further orders that, in the event that Mr. McGran predeceases Mrs. McGran, lump sum payments payable under the plan CT Page 14688-g for Mr. McGran's accumulated contributions and interest are ordered payable to Mrs. McGran.
No counsel fees are awarded to either party.
Lynda B. Munro, Judge
CT Page 1